IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Rojai Lavar Fentress,<br>*also known as*<br>Karim J. ShabazzAllah<br>    Petitioner,<br><br>v.<br><br>Harold W. Clarke,<br>    Respondent. | )<br>)<br>)<br>)<br>)<br>)    1:15cv965 (TSE/IDD)<br>)<br>)<br>) |

MEMORANDUM OPINION

Rojai Lavar Fentress, also known as Karim J. ShabazzAllah, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his 1997 convictions for first degree murder and use of a firearm in the commission of a murder, entered in the Circuit Court of the City of Richmond, Virginia. On February 29, 2016, respondent filed a Rule 5 Answer accompanied by a Motion to Dismiss and supporting brief. Dkt. Nos. 14, 15, 16. Petitioner was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he has filed a response. Dkt. No. 32. For the reasons that follow, respondent's Motion to Dismiss must be granted.[1]

I.

Petitioner was convicted of first degree murder and use of a firearm in the commission of a murder by a jury in the Circuit Court for the City of Richmond on May 22, 1997. Case No.

---

[1] Importantly, 28 U.S.C. § 2254 provides that "the court shall not hold an evidentiary hearing on the claim unless the applicant shows," inter alia, that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). Here, for the reasons discussed below, petitioner has not met this burden, and therefore an evidentiary is neither necessary nor appropriate.

CR9601318F-01, -02; Dkt. No. 16, Ex. 1. At the time of the offense, petitioner was a juvenile, so the trial court, pursuant to Virginia Code § 16.1-272, sentenced petitioner to 53 years' incarceration. Id.

Petitioner appealed his convictions to the Court of Appeals of Virginia, which granted review of his claims. By memorandum opinion and order dated September 15, 1998, the Court of Appeals affirmed petitioner's convictions. Id. Petitioner sought further review by the Supreme Court of Virginia, which refused the petition for appeal on January 14, 1999. Rec. No. 982115; Dkt. No. 16, Ex. 2.

The pertinent facts, supported by the record and reported by the Court of Appeals of Virginia, are as follows:

> [T]he victim, Thomas Foley, and his companion, Julie Howard, drove to the Midlothian Village Apartments to purchase cocaine. Howard parked the car near a streetlight in a well-lit area in front of the breezeway to one of the apartment buildings. The victim rolled down the passenger side window and peered out at a group of six to eight young men standing approximately fifty yards away from the vehicle. One of the men, whom Howard identified in court as the [petitioner], approached the victim and asked what he wanted. When the victim told [petitioner] that he only "dealt with" another individual, [petitioner] said the victim would have to "deal with me" and walked away from the car and rejoined the group.
> A couple of minutes later, [petitioner] returned to the car and showed the victim two "zip bags" of crack cocaine. The victim removed $57 from his pocket, examined the bags of cocaine, told [petitioner] that the bags did not appear to contain enough cocaine, and asked if [petitioner] "could do better than that." [Petitioner] walked away momentarily and then returned to the car for a third time. Howard testified that [petitioner] looked "very nervous" and that he held his hand in his pants pocket with his shirt "hanging over his hand." [Petitioner] told the victim, "If you want to deal with me, you have to get out of the car." The victim exited the car and followed the [petitioner] into an apartment building breezeway. Howard saw no other persons enter the breezeway, but she testified that it was too dark for her to see inside the breezeway. "[W]ithin five, ten seconds, tops" after seeing [petitioner] and the victim enter the breezeway, Howard heard a single gunshot. The victim ran from the breezeway, reentered the car, and said, "I have been shot in the heart, and I'm going to die. [T]he son of a bitch shot me." The victim later died.

2

Fentress v. Commonwealth, No. 2056-97-2, 1998 WL 614169, at *1 (Va. Ct. App. Sept. 15, 1998).

Following the denial of his direct appeal, petitioner filed motions to vacate his convictions and for a new trial on September 23, 1999, January 7, 2000, and June 29, 2001, on the ground that his case had been transferred to circuit court without giving proper notice to his biological father. Dkt. No. 16, Ex. 3. The trial court denied petitioner's motions on October 30, 2001. Dkt. No. 16, Ex. 4. Petitioner appealed the trial court's ruling to the Supreme Court of Virginia, which refused his petition for appeal on July 1, 2002. Dkt. No. 16, Ex. 5.

On November 20, 2006, petitioner filed an "Independent Action for Relief from Judgment" in the trial court, along with a memorandum in support of the motion. Dkt. No. 16, Ex. 6. The trial court denied the motion on February 1, 2007. Dkt. No. 16, Ex. 7. The Supreme Court of Virginia refused petitioner's subsequent petition for appeal on September 24, 2007. Dkt. No. 16, Ex. 8. Petitioner never filed a form petition for a writ of habeas corpus in the Virginia state courts.

On or about July 29, 2015, petitioner filed the instant petition, wherein he challenges his convictions on the following grounds:

> (1) Gateway Claim: Petitioner is actually innocent of the murder and use of a firearm in the commission of murder charges on which he was convicted, as demonstrated by a sworn affidavit from the actual killer confessing to the crimes. This affidavit constitutes new reliable evidence of petitioner's actual innocence.
> (2) Trial counsel was ineffective for failing to:
>     (a) impeach the only eyewitness who testified at trial.
>     (b) prevent her testimony from being admitted into evidence at trial.
> (3) Trial counsel was ineffective for failing to challenge the Commonwealth's subordination of perjury or its knowing or reckless use of false testimony.

See Dkt. No. 1.

## II.

Petitioner's Claims (2)(a), (2)(b), and (3) are untimely, and must be dismissed. Claims filed in a petition for a writ of habeas corpus must be dismissed if filed later than one year after: (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted, if that right applies retroactively; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D).

In the instant case, petitioner was convicted of first degree murder and use of a firearm in the commission of a murder on May 22, 1997 in the Circuit Court of the City of Richmond. Petitioner's convictions were affirmed by the Court of Appeals of Virginia on September 15, 1998, and petitioner then appealed to the Supreme Court of Virginia, which refused his petition for appeal on January 14, 1999. Therefore, petitioner's convictions became final on April 14, 1999, the last date he could have petitioned the Supreme Court of the United States for a writ of certiorari.[2]

Generally, in calculating the one-year statute of limitations period, however, the Court must exclude the time during which state collateral proceedings pursued by petitioner were pending. See 28 U.S.C. § 2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Here, petitioner did not commence his first post-conviction proceeding until November 20, 2006.[3] By then

---

[2] U.S. Sup. Ct. R. 13(1) (petitions for review are timely filed within 90 days of the entry of judgment by a state court of last resort); see also Lawrence v. Florida, 549 U.S. 327, 333 (2007) (reaffirming the inclusion of time for seeking review by the Supreme Court in calculating when direct review of a state criminal conviction becomes final under § 2244(d)).

[3] Liberally construed, petitioner's "Independent Action for Relief from Judgment" may be construed as a state habeas petition.

approximately 2,867 days, or seven (7) years, had passed since petitioner's convictions had become final. Accordingly, the federal statute of limitations had expired, and petitioner's untimeliness could not be tolled by filing his "Independent Action for Relief from Judgment." See Edwards v. Warden, No. 1:12cv969 (AJT/TRJ), 2013 WL 4040393, at *2 (E.D. Va. Aug. 8, 2013) (citing Ferguson v. Palmateer, 321 F3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition . . . filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled")).

By Order dated July 31, 2015, petitioner was given the opportunity to argue that the statute of limitations did not apply to him or to establish that he was entitled to equitable tolling;[4] however, petitioner failed to do either.[5]

### III.

Actual innocence, "if proved, [may] serve[] as a gateway through which a petitioner may pass [when] the impediment is . . . the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). Petitioner attempts to overcome the statute of limitations by arguing that he is actually innocent of the crimes for which he was convicted.[6] However, petitioner cannot avail

---

[4] Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) (requiring notice and the opportunity to respond before a sua sponte dismissal under § 2244(d)).

[5] Petitioner has not argued that the factual predicate underlying Claims (2)(a), (2)(b), and (3)—each of which involves incidents that occurred during trial—was not available to him at the time of the trial. Petitioner merely argues that the factual predicate of his actual innocence gateway claim, Claim (1), did not exist until August 6, 2014.

[6] Petitioner also argues that his actual innocence of his convictions excuses his procedural default, based on House v. Bell, 547 U.S. 518, 521 (2006) and Schlup v. Delo, 513 U.S. 298, 319-22 (1995)).

himself of this "fundamental miscarriage of justice" exception, which only applies where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 495-96 (1986).

The evidence necessary to make a showing of actual innocence must be "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." Schlup, 513 U.S. at 324. To establish the requisite probability of innocence, a petitioner must show that, in light of this new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id.; Sharpe v. Bell, 593 F.3d 372 (4th Cir. 2010). "The Schlup mandate thus ensures that a gateway actual innocence assertion must be 'truly extraordinary,'" Wolfe v. Johnson, 565 F.3d 140, 164 (4th Cir. 2009) (quoting Schlup, 513 U.S. at 327).

When presented with new evidence of a petitioner's innocence, "the habeas court must [then] consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" House, 528 U.S. at 538 (quoting Schlup, 513 U.S. at 327-28). Based on the total record before it, "the court must make a probabilistic determination about what reasonable, properly instructed jurors would do." Id. (internal quotations omitted). This standard is demanding, and therefore, "tenable actual-innocence gateway pleas are rare." McQuiggin, 133 S. Ct. at 1928.

When these principles are applied in this case, it is clear that petitioner has failed to "support his allegations of constitutional error with new reliable evidence." Schlup, 513 U.S. at 324. The only newly-discovered evidence that petitioner has proffered is an affidavit, dated August 6, 2014, nearly twenty (20) years after petitioner's convictions were entered, by another inmate, Deanthony Doane. Dkt. No. 1 at 75; Dkt. No. 33. Doane was housed together with petitioner at Keen Mountain Correctional Center and was assigned to the same general

6

population pod as petitioner from June 3, 2014 to August 10, 2014.[7] Dkt. No. 16, Ex. 10 at 1. During an interview with a Department of Corrections investigator on February 2, 2016, Doane admitted to writing the affidavit and giving it to petitioner after they met inside the correctional facility. Dkt. No. 16, Ex. 11. In addition to the questionable delay in filing the affidavit eighteen (18) years after the 1996 murder was actually committed, the basic fact that Doane wrote the affidavit while he and petitioner were incarcerated together "call[s] into question" the affidavit's reliability. Milton v. Sec'y, Dep't of Corr., 347 F. App'x 528, 531 (11th Cir. 2009) (noting skepticism of affidavits filed by other inmates incarcerated with petitioner). During the two months that petitioner and Doane were incarcerated together, they were "permitted to come out of their cells to interact for programs, meals, outdoor recreation and dayroom activities including watching television, playing games and talking with one another." Dkt. No. 16, Ex. 10. Additionally, general population inmates at Keen Mountain Correctional Center "are out of their cells approximately 9 hours each day." Id. Thus, between June and August 2014, petitioner and Doane had ample time to concoct the particulars of the crime included in the affidavit, and to make sure the affidavit contained details consistent with the evidence presented at petitioner's trial.

Doane's account of how he came to write the affidavit further undermines its credibility. See e.g., Mendez v. Graham, No. 11-CV-5492 ARR, 2012 WL 6594456, at *11-12 (E.D.N.Y. Dec. 18, 2012) (finding that a co-inmate's confession of committing petitioner's convicted crime

---

[7] Petitioner also proffers an affidavit from his mother, Bessie Fentress; however, Bessie testified at petitioner's trial consistently with the information presented in her affidavit. Dkt. No. 16, Ex. 9 (Tr. 3/12/97) at 197-208. Therefore, none of the information she now proffers can be considered newly-discovered. Even if Bessie's testimony were considered to be newly-discovered evidence, "a reasonable juror could easily conclude that the affidavit[] . . . should be viewed with caution" because Bessie is petitioner's mother, "and, thus [has] a personal stake in his exoneration." Chavis-Tucker v. Hudson, 348 F. App'x 125, 134 (6th Cir. 2009); see also Huffington v. Nuth, 140 F.3d 572, 581 (4th Cir. 1998) (looking at petitioner's father's testimony "in light of the potential bias inherent in such testimony").

was unbelievable because the co-inmate allegedly came to learn that petitioner had been convicted of his crimes during a conversation while they were incarcerated together). In this case, Doane claims that he decided to come clean and write the affidavit after having a conversation with petitioner at Keen Mountain Correctional Center in which Doane discovered that petitioner had been convicted of a murder that Doane had actually committed. Dkt. No. 16, Ex. 11. Allegedly, after discovering that petitioner had been "wrongfully convicted" of his crimes, this "information continued to bother" Doane, so he decided to come clean and write the affidavit "to explain things" on petitioner's behalf. Id.; see also Dkt. No. 33. Doane's reasoning regarding how he came to write the affidavit is highly suspect because is unlikely that Doane would coincidently encounter another inmate who just so happens to be serving a sentence for a 1996 murder that he had in fact committed. It is even more improbable that Doane would arbitrarily decide "to explain things" and take responsibility for a 1996 murder almost twenty (20) years after it occurred on behalf of another inmate he has only known for two months.

Putting aside the unbelievable coincidence that petitioner would, by chance, describe the details of his convictions to the individual who actually committed those violent crimes, Doane's long-term imprisonment and petitioner's extensive criminal convictions cast additional doubt upon the credibility of the affidavit. Doane is incarcerated on convictions for second degree murder and use of a firearm in the commission of murder, and his scheduled release date is set for August 13, 2040. Dkt. No. 16, Ex. 12. Doane asserts that if he were to be charged with petitioner's crimes, "he would not roll over and just plead guilty, because he was only fifteen at the time." Dkt. No. 16, Ex. 11. Doane's long term of imprisonment and his 1996 juvenile status reduce the threat of criminal penalty or other sanctions that could attach to his statements in the affidavit, further undermining the affidavit's credibility. It is doubtful that the Commonwealth

of Virginia would now be able to successfully prosecute Doane for a murder that occurred in 1996, and Doane's potential sentence would be limited because he was a juvenile in 1996 when the offense occurred. Moreover, petitioner and Doane's criminal convictions even further undermine their respective credibilities. Morales v. Johnson, 659 F.3d 588, 606 (7th Cir. 2011) (noting that "convicted felons have diminished capacity"); see also Fed. R. Evid. 609 (governing the impeachment of witnesses using evidence of prior criminal convictions). In light of these circumstances, Doane's affidavit is not the sort of "new reliable evidence" that the Schlup inquiry demands. Schlup, 513 U.S. at 324.

Finally, Doane's claim that he, not petitioner, murdered the victim, does not provide any reliable detail about the crime and conflicts with the testimony of the only eyewitness who testified at trial, Julie Howard. There is no indication that Deanthony Doane knew the victim, Thomas Foley, and there was never any evidence presented at trial suggesting that Doane was present during the murder of the victim. Petitioner does not contest that two other eyewitnesses who did not testify at trial, positively identified petitioner as the only individual who walked into the breezeway with the victim seconds before he was shot.[8] Dkt. No. 16, Exs. 13, 14. Finally, during the trial, Howard identified petitioner and testified that she had only seen petitioner and the victim walk into the breezeway of an apartment building together. Dkt. No. 16, Ex. 9 at 111, 119. Howard testified that, seconds later, she heard a gunshot and the victim ran out of the breezeway and got back in the car with her. Id. at 119. The victim then told Howard, "I have been shot in the heart and I'm going to die . . . The son of a b**** shot me." Id. at 119, 164.

---

[8] Respondent asserts that, during the investigation, investigators conducted video interviews, in which the two witnesses, Leonard "Teon" Hayden and Peter Lenard Jones, gave accounts of the shooting that were consistent with Julie Howard's trial testimony. Dkt. No. 16 at 13-14. According to the respondent, and uncontested by petitioner, neither of those witnesses ever mentioned Deanthony Doane during those interviews.

When Howard was asked if she had any doubt that petitioner was the young man who she had seen walk into the breezeway with the victim, she answered, "He is the man that I saw." Id. at 126. In light of Howard's self-assured testimony that petitioner walked into the breezeway alone with the victim seconds before he was shot, petitioner has failed to meet his burden to establish that no reasonable juror would reject Doane's attempt to take the blame for the murder and petitioner's claim that he was home with his mother at the time the victim was shot. Hazel v. United States, 303 F. Supp. 2d 753, 761 (E.D. Va. 2004) (finding it "important to note that a rational jury might well not credit the affidavit" where the information contained within conflicts with the testimony of key witnesses at trial).

Well-reasoned Supreme Court precedent supports the conclusion that petitioner has not provided reliable newly-discovered evidence to excuse him from the statute of limitations bar. The Supreme Court has noted that affidavits disclosing new exculpatory evidence, filed many years after a petitioner's trial, are extremely suspect and often incredible. Herrera v. Collins, 506 U.S. 390, 423 (1993) ("Affidavits like these are not uncommon . . . . It seems that, when a prisoner's life is at stake, he often can find someone new to vouch for him. Experience has shown, however, that such affidavits are to be treated with a fair degree of skepticism."). In Herrera, the "[p]etitioner's newly discovered evidence consist[ed] of affidavits" that were "given over eight years after petitioner's trial" declaring that petitioner's now-dead brother had actually committed the two murders that petitioner had been convicted of. Id. (noting that "[n]o satisfactory explanation has been given as to why the affiants waited until the 11th hour" to provide new information about the crime). Additionally, those affidavits conflicted with evidence presented at trial, "contain[ed] inconsistencies," and "fail[ed] to provide a convincing account of what took place on the night Officers Rucker and Carrisalez were killed." Id. at 418.

Thus, in evaluating petitioner's actual innocence claim, the Court reasoned that "the affidavits must be considered in light of the proof of petitioner's guilt at trial - proof which included two eyewitness identifications, numerous pieces of circumstantial evidence, and a handwritten letter in which petitioner apologized for killing the officers and offered to turn himself in under certain conditions." Id. at 418, 423 ("[S]uch affidavits are to be treated with a fair degree of skepticism"). All of that evidence presented at trial, "even considered alongside petitioner's belated [and suspicious] affidavits, point[ed] strongly to petitioner's guilt." Id. Therefore, the Court held that petitioner's "showing of innocence [fell] far short of that which would have to [have been] made in order to trigger the sort of constitutional claim" petitioner sought. Id. at 418-19.

This authority supports the conclusion that petitioner has failed to meet his burden to establish that, in light of Doane's affidavit, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House, 547 U.S. at 537.[9] Therefore, petitioner has not met the gateway provisions of Schlup and McQuiggen, and he cannot overcome the statute of limitations.

---

[9] Because petitioner has failed to demonstrate actual innocence to overcome his procedural default in state court and his failure to file a timely petition in this Court, this failure further precludes federal habeas review of Claims (2)(a), (2)(b), and (3). Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 750 (1991); Teague v. Lane, 489 U.S. 288, 298 (1989).

## IV.

For the foregoing reasons, the petition must be dismissed, as filed beyond the one-year statute of limitations period in § 2244(d). An appropriate Order shall issue.

Entered this 28th day of July 2016.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge